AUTO-TROL TECHNOLOGY CORPORATION v. THE INDUSTRIAL COMMISSION *et al.* (Robert Gasparich, Appellee).

First District (Industrial Commission Division)    Nos. 1—87—3767WC, 1—88—3741WC cons.

Opinion filed August 25, 1989.

Garofalo, Hanson, Schreiber & Vandlik, Chartered, of Chicago (Joseph A. Garofalo and Gregory P. Sujack, of counsel), for appellant.

Wiedner & McAuliffe, Ltd., of Chicago (Russell P. Standlee, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, Robert Gasparich, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) for injuries he received in an accident on August 22, 1982. Following a hearing, the arbitrator found that the petitioner had sustained permanent, totally disabling injuries arising out of and in the course of his employment with the respondent, Auto-Trol Technology Corporation. The arbitrator further found that the petitioner was entitled to receive from the respondent, *inter alia*, payment for all necessary medical, surgical, and hospital services and the sum of $227.89 per week for life, pursuant to sections 8(a)

and 8(f) of the Act (Ill. Rev. Stat. 1987, ch. 48, pars. 138.8(a), 138.8(f)). The Industrial Commission (Commission) affirmed the arbitrator's decision, and the circuit court of Cook County confirmed the Commission's decision. The respondent appeals.

The record shows that the petitioner was employed by the respondent as a field engineer. The respondent was in the business of selling, installing, and maintaining computer systems utilized in designing and producing manufacturing equipment. Alex Strazzanti, the regional manager in charge of sales, was responsible for supervising the sales personnel. John Krakar, the regional manager in charge of installation and maintenance, supervised the field engineers. Krakar and Strazzanti would meet to discuss problems concerning the working relationship between the sales personnel and the field engineers. Krakar testified that in an attempt to strengthen that relationship, the field engineers tried to get together with their sales counterparts every summer.

In August of 1982, Krakar and Strazzanti met to discuss problems which had developed between their respective divisions. It was decided that the two groups of employees needed to get together in a setting away from the office and attempt to work out their difficulties. They were unable to secure a pavilion in a local forest preserve for the event, so Strazzanti offered the use of his home. Krakar and Strazzanti planned and organized the event. They scheduled the picnic for Sunday, August 22, 1982, and posted an announcement in the office. The parties stipulated that this announcement was drafted by a secretary and not by Krakar. Spouses were invited, but the announcement requested that children not attend.

Krakar testified concerning a conversation he had with the petitioner on the Friday afternoon before the picnic. The petitioner asked Krakar if it was mandatory that he attend the function. Krakar told him "that it would serve his career very well if he attended [the] function." Krakar further testified that a couple of weeks earlier he had emphasized the importance of working with the sales staff. According to Krakar, the petitioner was present when he made that point. The petitioner testified that he was unable to recall the picnic or anything which had taken place in the days before the accident.

Ronald Zivic, a field engineer working out of the Milwaukee office, testified that Krakar had told him he had to come to the picnic and spend time with his counterparts. Zivic told Krakar he had other plans and Krakar said, "[N]o, you will be there." Zivic changed his plans and attended the picnic. The record shows that only two field engineers did not attend the function. One engineer's wife was ex-

pecting a baby and the other was in a family wedding.

At the picnic, food and beverages were served and those attending played touch football and bocci ball. Krakar and Strazzanti organized teams for the games so that engineers and sales people would be mixed together on each team. Krakar instructed the engineers to spend time with their respective counterparts in sales at the picnic. Zivic testified that "a lot" of business was discussed.

Zivic and his brother Ken, who was also a field engineer, discovered a motorcycle in Strazzanti's garage. Strazzanti commented that the motorcycle had not run for a year. Eventually, the Zivics were able to get the motorcycle in running order. Both Zivics took the motorcycle for a brief ride. Strazzanti voiced concern about the safety of the motorcycle, but said it was okay after riding it himself. The petitioner was the fourth person to ride the motorcycle. After riding around the block, he turned into Strazzanti's driveway. As he did so, the motorcycle suddenly accelerated, cut across two lawns, and hit a neighboring house. The petitioner was found unconscious under the motorcycle.

The record shows that the petitioner sustained extensive head injuries and was in a coma for a number of weeks. It also shows that in the opinion of Dr. Mary Keen, his treating physician, the petitioner was totally disabled.

At the arbitration hearing, a copy of a letter addressed to the Industrial Commission from James E. Wilkes, the respondent's director of human resources, was admitted into evidence. In the letter, Wilkes stated: "As the employer, we feel that the occurrence should be covered under Workman's Compensation, in that it occurred during a formal Company Picnic."

The arbitrator found that the petitioner had attended the company picnic "at the direction of and implied order" of Krakar and that Strazzanti by words and actions had made the motorcycle available at the picnic for the employees' amusement. She further found that there was no indication that the petitioner was capable of developing skills for which there would be a market.

On review by the Commission, the majority found that the petitioner's attendance at the company picnic had been mandatory and that Strazzanti's actions had ratified the use of the motorcycle by the petitioner. It therefore affirmed the arbitrator's decision. Commissioner Holland dissented, concluding that based on the evidence the petitioner had not been ordered to attend, nor had the accident resulted from the respondent's providing an amusement device. The circuit court confirmed the majority's decision, and the respondent appeals.

The following issues are raised on appeal: (1) whether the circuit court had jurisdiction over the original appeal filed in the instant cause; (2) whether as a matter of law, the petitioner was ordered or assigned to participate in the picnic, and in the alternative, whether the Commission's finding that he was so ordered was against the manifest weight of the evidence; and (3) whether the Commission erred in finding that the petitioner's injuries arose out of his employment.

Initially, we note that at oral arguments jurisdiction was conceded. We therefore need not address this issue. The circuit court's ruling on the jurisdictional question is affirmed.

The respondent next contends that the Commission erred as a matter of law in finding that the petitioner was ordered or assigned to attend the picnic within the meaning of section 11 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.11). It argues that the facts were not in dispute and that the Commission could make only one reasonable inference from those facts: the petitioner was not ordered to attend.

■ Only when the undisputed facts are susceptible to but a single inference does the issue become one of law. (*Fischer v. Industrial Comm'n* (1986), 142 Ill. App. 3d 298, 491 N.E.2d 1333.) If undisputed facts upon any issue permit more than one reasonable inference to be drawn therefrom, the determination of such issue presents a question of fact, and the conclusion of the Industrial Commission will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 509 N.E.2d 1005.

■ We agree that in the instant case the facts were not in dispute, but we do not agree, as the respondent contends, that the Commission could only draw one reasonable inference from those facts. Since the facts were susceptible to more than one inference, the issue entails a finding of fact. Our review therefore is limited to determining whether the Commission's finding that the circumstances served to make the petitioner's attendance at the picnic mandatory was against the manifest weight of the evidence.

Section 11 of the Act states in pertinent part: "Accidental injuries incurred while participating in voluntary recreational programs including but not limited to athletic events, parties and picnics do not arise out of and in the course of the employment even though the employer pays some or all of the cost thereof. This exclusion shall not apply in the event that the injured employee was *ordered or assigned* by his employer to participate in the program." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 138.11.

■ The record shows that the picnic was held to allow the field engineers and the sales staff to meet in an informal setting to discuss work-related problems. It was held annually according to Krakar and was organized in this case after Krakar and Strazzanti determined that it was necessary for their respective staffs to meet and iron out problems which had recently developed. Krakar and Strazzanti, the respondent's regional managers, planned and organized the entire event. Ronald Zivic testified that a great deal of business was discussed. Krakar testified that he instructed his staff to spend time with their sales counterparts at the picnic. Spouses were invited, but it was requested that children not attend. In addition, the letter from Wilkes indicates that the respondent considered the activity a formal company gathering. The record is sufficient to allow the Commission to find that attendance at the picnic was mandatory, despite the fact that Krakar did not give a definitive yes or no answer to the petitioner's inquiry. Zivic testified that he was told he had to attend the picnic. The only field engineers not attending had overriding family commitments. Given the clear business emphasis, the Commission's finding on this issue was not against the manifest weight of evidence.

The respondent also contends that the Commission erred in finding that the injury arose out of the petitioner's employment. It argues that the injury arose out of a purely personal risk and that it did not arise out of a risk inherent in or incidental to the petitioner's employment.

■ An injury "arising out of" one's employment may be defined as one which has its origin in some risk so connected with, or incidental to, the employment as to create a causal connection between the employment and the injury. (*Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 509 N.E.2d 1005.) The injury can be said to have occurred within the course of employment when the employer acquiesces and participates in the activity. See *Eagle Discount Supermarket v. Industrial Comm'n* (1980), 82 Ill. 2d 331, 412 N.E.2d 492.

■ The record is sufficient to support the Commission's finding. Strazzanti made the motorcycle available along with the other recreational equipment. He allowed the petitioner to use the motorcycle after he himself used it and declared it okay to ride. As with the playing of football and bocci ball, the motorcycle riding was part of the activities at the picnic. Compensable injuries could also have arisen had the petitioner been injured on a broken swing provided for the employees' use, or during the football game. In the instant case, the respondent has not provided sufficient reasons to distinguish the riding of the motorcycle from the other activities provided at the picnic.

The Commission's finding on this issue therefore was not against the manifest weight of evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.