LAW OFFICES OF WILLIAM W. SCHOOLEY, Appellant, v. THE INDUSTRIAL COMMISSION et al. (John O. Schooley, Appellee).

Fifth District No. 5—86—0110WC

Opinion filed February 3, 1987.

McNAMARA, J., dissenting.

John R. Geiss, of Keefe & DePauli, P.C., of Fairview Heights, for appellant.

James B. Wham, of Wham & Wham, of Centralia, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Respondent (employer), Law Offices of William W. Schooley, appeals from a judgment of the trial court setting aside the Industrial Commission's denial of benefits to the claimant, John Schooley (hereinafter John). The employer contends on appeal that John's injury did not arise out of and in the course of his employment within the meaning of section 11 of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.11).

John had worked for about seven years as a law clerk for his father's law firm. Generally, his duties included investigation, research, and providing transportation for the firm's clients. John alleged that part of his duties involved managing a softball team sponsored by the law firm and a local tavern. Everett Kelly, the firm's investigator, owned the tavern that co-sponsored the team. John had previously played with the same team when it was under a different sponsorship.

John's employer, the law firm, provided the softball team with uniforms that read "Eddie's Lounge" on the back and "Et Al" on the front of the shirt. John testified that "Et Al" was associated with the law firm by the team members and community. Kelly and the law firm split the cost of the team's equipment, uniforms, and league and tournament fees.

During office hours, John was authorized to use the firm's copy-

ing machine and telephones for softball matters. John's telephone number supplied on the team roster was the office number. Two to three days each week John would leave work early to practice with the team. The time he spent with the team was not deducted from his paycheck.

John was directed to bring the team to Eddie's Lounge after their games. William Schooley, John's father, would attend the games occasionally and join the team at the tavern where he bought them pitchers of beer; he testified that his sponsorship of the team enhanced his law practice. He derived business from members of the team and patrons of the tavern due to his relationship with the team. He procured two personal injury cases and numerous wills and traffic offenses.

On August 3, 1981, during the first season under the law firm's sponsorship, John injured his back while playing softball during a regularly scheduled game. Thereafter, John filed an application for workers' compensation benefits. After a hearing, an arbitrator awarded John temporary total benefits for a period of 18$\frac{3}{7}$ weeks, 35% loss of the use of the right leg, and $7,973 for necessary medical expenses. On review, the Industrial Commission set aside the arbitrator's decision finding that the softball team was a voluntary recreational program and that John was not ordered to play softball. The trial court reinstated the arbitrator's award, holding that John's injury arose out of and in the course of his employment.

■ The employer's sole contention is that the decision of the Industrial Commission should have been upheld as it was not contrary to the manifest weight of the evidence. An Industrial Commission's decision will not be disturbed unless it is against the manifest weight of the evidence. (*Certi-Serve, Inc. v. Industrial Com.* (1984), 101 Ill. 2d 236, 244.) Given the circumstances of this case, the trial court properly reversed the Industrial Commission's decision denying compensation.

■ The trial court held that the Industrial Commission's finding that John's participation in the softball league was voluntary rather than part of John's employment duties was not supported by the evidence. The relevant section of the Workers' Compensation Act provides:

> "Accidental injuries incurred while participating in voluntary recreational programs including but not limited to athletic events, parties and picnics do not arise out of and in the course of the employment even though the employer pays some or all the cost thereof. This exclusion shall not apply in the event

that the injured employee was ordered or assigned by his employer to participate in the program." Ill. Rev. Stat. 1985, ch. 48, par. 138.11.

While the Act excludes the volunteer recreational programs such as athletic events, the exclusion does not apply when an employee is ordered or assigned by his employer to participate therein.

Respondent argues that playing softball was not within the scope of John's employment. The evidence indicates that John was instructed to manage the softball team by his employer. John testified that he was directed by his father to manage the softball team. Only John was allowed to manage the team. William Schooley corroborated his son's testimony that he had to manage the team and be sure to bring the team to the tavern after their games. Kelly also testified that John would also "manage the team, and play if need be, with the team."

The evidence also shows that the employer contemplated that a situation would arise where John would be playing in connection with his managerial duties. William Schooley's testimony indicated that if they ran short of players, he told John to play "if he wanted to." John testified on direct examination:

"Q. Did he ever ask you or direct you to play for the softball team?

A. Yes, sir, that was one of the stipulations, I was to manage it, and if it needed to be filled in, I would have to fill in if the players weren't there."

Under cross-examination, John indicated that he was expected to play on the team:

"Q. And it was when if I understand correctly, it was when your father took over the sponsorship of the team that he told you that you were required to play?

A. Yes, it was.

Q. So you had played for the team about a year then your father took over the team sponsorship with Mr. Kelly, and that's when he told you that you had to play on the team?

A. Right.

Q. Did he indicate to you why you had to play on the team?

A. He said he wasn't going to sponsor the team if I wasn't going to play, there was no reason for him to sponsor our team."

The testimony from plaintiff, William Schooley, and Everett Kelly indicates that plaintiff was designated to manage the team and to play for the team when it became necessary. The determination of

when it was necessary for him to fill in was left to his managerial discretion.

Respondent argues that the trial court improperly relied on the factors outlined in *Jewel Tea Co. v. Industrial Com.* (1955), 6 Ill. 2d 304, 312-16, when overturning the Industrial Commission's decision. In *Jewel Tea*, the court awarded benefits to an employee who was injured in a company-sponsored softball game. The court considered the extent of the employer's benefit derived from the activity, the extent of the employer's involvement with the activity, and the amount of encouragement or pressure exerted by the employer on the employee to participate in the activity. The respondent asserts, without any supporting authority, that *Jewel Tea* is no longer valid authority since the enactment in 1980 of section 11 of the Workers' Compensation Act which excludes voluntary recreational activities. The Act, however, only excludes voluntary recreational activities if participation is not ordered or assigned by the employer.

Recent cases employ the criteria listed in *Jewel Tea* to determine whether the activity was ordered or assigned. In *Fischer v. Industrial Com.* (1986), 142 Ill. App. 3d 298, 303, the employee participated in a weekend golf outing and while playing golf, died of a heart attack; the decision of the Commission and the trial court denying recovery was affirmed on appeal. In that case, this court reviewed cases involving recreational activities and the criteria for determining whether the recreational activity itself arises out of and in the course of employment.

This court in *Fischer* stated that the individual facts of each recreational activity must be carefully reviewed along the following principal lines of inquiry: (1) to what extent the employer benefits from the employee's attendance at the outing; (2) to what extent the employer actively organizes and runs the recreational attendance at the event; and (3) to what extent the employer sponsors and compels attendance at the event. The evidence in this case must be analyzed under the three foregoing lines of inquiry.

In this case, the law firm benefited from John's participation in the softball league. The testimony indicates that as a result of John's relationship with the team, which was sponsored by the firm, the firm received business from team members, their families, and the tavern patrons. The use of "Et Al" on the team uniforms became commonly associated with the law firm in the community. Although John, not his father, organized the team, his father attended the games occasionally and met with the team after the games at the tavern. John was directed by his father to manage the team, which was

sponsored by the firm and under the firm's name. The firm split the cost with Kelly for entry fees and uniforms. John also had the use of the firm's copier, telephone, and secretarial staff for team matters. The court in *Fischer* found that the amount of financial contribution is one indicator of employer support but not determinative by itself. Of particular significance is that John's paycheck was not reduced for the time he spent practicing and conducting team matters. In light of this evidence, the employer's support of John's participation with the team was more than mere cooperation in allowing him to play. *Keystone Steel & Wire Co. v. Industrial Com.* (1968), 40 Ill. 2d 160, 163.

The respondent here, however, challenges the mandatory nature of John's involvement with this team, specifically, as to whether acting as a player was ever within the purview of his duties as a manager, and, more particularly, this challenge is based upon the single statement by William Schooley that the plaintiff should "go ahead and play if he wanted to." The clear testimony of three separate witnesses stated that John was directed to manage the team and play, if necessary. The tavern sponsor and John testified that John was told to play if the need arose. On direct examination, William Schooley stated, "and I told him, if they ran short of players, go ahead and play if he wanted to." On cross-examination, William Schooley stated that he told John to play if the team was ever short of players for a game and that he, William Schooley, never would have sponsored the team if John was not going to play. Since John was able to play, part of the proper management of the team could be construed to require John to fill the role of an absent player when not enough players were available for the game. This is not only pursuant to the amount of evidence showing that he was instructed to do so, but in this situation, it would also seem to be consistent with his role as a manager of the team.

Accidental injuries incurred by an employee while participating in a voluntary recreational program are excluded by section 11 of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.11). However, the exclusion does not apply if the employee was ordered or assigned to participate in the "program." The "recreational program" here is a softball league, in all of its usual aspects. John sustained his injuries while participating in the softball league "program" as directed by his employer. The plain language of section 11 provides for Workers' Compensation coverage as long as the employee was "participating in the program" at the direction of his employer.

■ The Commission's findings of fact are not to be set aside by a reviewing court unless contrary to the manifest weight of the evi-

dence (*Fischer v. Industrial Com.* (1986), 142 Ill. App. 3d 298, 304). Here, we find that the overwhelming evidence clearly demonstrated that John sustained his injury while participating in the "program" as directed by his employer. We conclude that it was against the manifest weight of the evidence for the Industrial Commission to determine that John's injury was not within the scope of his employment. For the foregoing reasons, the trial court decision is affirmed.

Affirmed.

BARRY, P.J., and McCULLOUGH and KASSERMAN, JJ., concur.

JUSTICE McNAMARA, dissenting:
I respectfully dissent. I do not believe that the Commission was compelled to accept the testimony of the three witnesses that the elder Schooley *ordered* his law clerk son to play on the softball team he was managing. The Commission could conclude that such testimony was far-fetched and unworthy of belief. Absent such an order by the employer that it was a job requirement to play on the team (Ill. Rev. Stat. 1985, ch. 48, par. 138.11), the Commission was entitled to find that the employee was participating in a voluntary recreational program and thus was not entitled to benefits.

I would vacate the judgment of the circuit court and would reinstate the decision of the Commission.